**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 02-20183

KEITH BERNARD CLAY,

Petitioner-Appellant,

versus

JANIE COCKRELL, Director, Texas Department
of Criminal Justice, Institutional Division,

Respondent-Appellee.

Appeal from United States District Court
for the Southern District of Texas
(01-CV-237)

August 20, 2002

Before JOLLY, HIGGINBOTHAM, and STEWART, Circuit Judges.

PER CURIAM:[*]

Petitioner Keith Bernard Clay ("Clay"), convicted of capital murder in Texas and sentenced

to death, requests a Certificate of Appealability ("COA") pursuant to 28 U.S.C. § 2253(c)(2). For

the reasons set forth below, we DENY the COA.

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

FACTUAL AND PROCEDURAL BACKGROUND

A brief summary of the facts is all that is necessary to dispose of the issues involved in this case. On January 4, 1994, Clay, Shannon Thomas ("Thomas"), and Ernest Lee King ("King") drove into the parking lot of a convenience store in Texas. Clay remained outside to use a pay phone and King went inside to purchase a pack of cigarettes. After King left the store, Clay went inside. As King returned to the vehicle, he heard gunshots coming from inside the store. King testified that he saw Clay shoot the clerk, Melanthethir Tom Varguhese ("Varguhese"). Varguhese was shot six times–Clay used his own gun, as well as a gun stored under the counter at the convenience store. Clay left the store carrying approximately $2,000 in cash. Clay then ordered Thomas to drive away.

At trial, in an effort to show Clay's future dangerousness, the prosecution introduced evidence, during the punishment phase, of Clay's involvement in the murder of a drug dealer and his two children. Clay was convicted of capital murder and was sentenced to death. On direct appeal, the Texas Court of Criminal Appeals affirmed Clay's conviction and sentence. Clay v. State, No. 72,811 (Tex. Crim. App. Mar. 10, 1998) (unpublished). Thereafter, Clay filed an application for state habeas corpus relief, which was denied. Ex Parte Clay, No. 43,906-01 (Tex. Crim. App. Jan. 19, 2000) (unpublished). Clay filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in federal district court on January 19, 2001. The State moved for summary judgment on all of Clay's claims and the district court granted the motion. The district court also denied Clay a COA, although Clay did not make a formal request for one. Clay now requests a COA from this Court.

STANDARD OF REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") because Clay filed his § 2254 habeas petition in the district court on January 19, 2001, after the April

2

24, 1996 effective date of the AEDPA.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997).  Under the AEDPA, before an appeal from the dismissal or denial of a § 2254 habeas petition can proceed, a petitioner must obtain a COA.  28 U.S.C. § 2253(c)(2).  A COA will be granted "only if the [petitioner makes] a substantial showing of the denial of a constitutional right."  Id.  To make a "substantial showing," the petitioner "must demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further."  Tennard v. Cockrell, 284 F.3d 591, 594 (5th Cir. 2002) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Where, as here, the district court rejects a prisoner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  "Any doubt regarding whether to grant a COA is resolved in favor of the petitioner, and the severity of the penalty may be considered in making this determination."  Tennard, 284 F.3d at 594.

In determining whether a COA should be granted, we must bear in mind the deferential scheme of the AEDPA.  Id.  Federal courts defer to a state court's adjudication of a petitioner's claims on the merits unless the state-court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  Under the "contrary to" clause, a federal court may grant habeas relief if the state court "reaches a legal conclusion in direct opposition to a prior decision of the United States Supreme Court or when it reaches a different conclusion than the United States Supreme Court on a set of

materially indistinguishable facts." Riddle v. Cockrell, 288 F.3d 713, 716 (5th Cir. 2002) (quoting

Kutzner v. Johnson, 242 F.3d 605, 608 (5th Cir. 2001)). Under the "unreasonable application"

clause, a federal court may grant the writ if the state court's application of clearly established federal

law is "objectively unreasonable." Id. Further, state court findings of fact are presumed to be correct

unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. §

2254(e)(1).

## DISCUSSION

In his petition for COA, Clay makes four arguments. First, he claims that the introduction of

unadjudicated offenses in the punishment phase of his trial violated his constitutional rights. Second,

he claims that the state trial court violated his constitutional rights by failing to inform the jury that

he would have not been eligible for parole for forty years had he been given a life sentence. Third, he

asserts that there was legally insufficient evidence to convict him of the crime. Finally, he contends

that the trial court erred in failing to grant him an evidentiary hearing. We will address each of these

arguments in turn.

### I.    Introduction of Unadjudicated Offenses

Clay asserts that the introduction of unadjudicated offenses during the penalty phase of his

trial violated his Eighth Amendment, Due Process, and Equal Protection rights. However, Clay failed

to present his Eighth Amendment or Equal Protection contentions to the state court. Thus, these

arguments are procedurally barred. See Nobles v. Johnson, 127 F.3d 409, 423 (5th Cir. 1997)

(finding an unexhausted claim, which would be barred by the Texas abuse-of-writ doctrine, if raised

in a state successive habeas petition, barred); TEX. CRIM. PROC. CODE ANN. art. 11.071 § 5(a)

(Vernon 2002) ("If a subsequent application for a writ of habeas corpus is filed after filing an initial

4

application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing [factors not present in the instant action]."). Even if these claims were not barred, and even considering Clay's Due Process claim, this Court has repeatedly held that Texas's system of allowing unadjudicated offenses into evidence during the penalty phase of a trial does not violate Due Process, Equal Protection, or the Eighth Amendment. E.g., Jackson v. Johnson, 194 F.3d 641, 656 (5th Cir. 1999) ("[C]ircuit precedent allows for the admission of unadjudicated offenses in death penalty proceedings without violating [D]ue [P]rocess, [E]qual [P]rotection, or the [E]ighth [A]mendment.").

Clay also asserts that Texas, if allowed to introduce unadjudicated offenses, should be required to prove a defendant's guilt, of those offenses, beyond a reasonable doubt. However, the Constitution does not create any such requirement. Turner v. Johnson, 106 F.3d 1178, 1189 (5th Cir. 1997) ("Although the [D]ue [P]rocess [C]lause requires the state to prove each element of the offense charged beyond a reasonable doubt to secure a conviction, neither this [C]ourt nor the Supreme Court has ever held that a similar burden exists regarding the proof of facts adduced during the sentencing phase. The precedents are to the contrary." (footnote omitted)).

Finally, Clay argues that since most states accompany the introduction of adjudicated offenses with a limiting instruction, Texas has violated the Constitution by failing to do so. This contention is meritless. The Constitution does not require any such limiting instruction and the practice of other states is irrelevant. Barrientes v. Johnson, 221 F.3d 741, 781-82 (5th Cir. 2000). As such, Clay has failed to make a substantial showing of the denial of a constitutional right with regard to his unadjudicated offense claim.

## II. Failure to Instruct the Jury Regarding Parole

5

Clay argues that the state trial court violated his Due Process, Equal Protection, and Eighth Amendment rights by failing to instruct the jury that, if it elected to impose a life sentence, he would be ineligible for parole for forty years.

A.    Due Process

Clay bases his due process argument on Simmons v. South Carolina, in which a plurality of the Supreme Court observed that "where the defendant's future dangerousness is at issue, and state law prohibits the defendant's release on parole, due process requires that the sentencing jury be informed that the defendant is parole ineligible." 512 U.S. 154, 156 (1994).  Clay argues that had the jury been informed that a life sentence would require him to remain in prison for at least forty years, the jury may have determined that he would not  pose a continuing threat and may have chose to impose a life sentence instead of the death penalty.  Simmons provides no support for Clay's due process challenge.  Simmons held that when "a capital defendant's future dangerousness is at issue, and the *only* sentencing alternative to death available to the jury is life imprisonment without possibility of parole, due process entitles the defendant to inform the jury of [his] parole ineligibility, either by a jury instruction or in arguments by counsel."  Kelly v. South Carolina, 122 S. Ct. 726, 728 (2002) (quoting Shafer v. South Carolina, 532 U.S. 36, 39 (2001)) (internal quotations omitted) (emphasis added); see also Ramdass v. Angelone, 530 U.S. 156, 166 (2000) (plurality opinion) ("The parole-ineligibility instruction is required *only when*, assuming the jury fixes the sentence at life, the defendant is ineligible for parole under state law." (emphasis added)).  Further, our circuit has consistently emphasized that Simmons applies only when there is a life-without-possibility-of-parole alternative to capital punishment, an alternative that is not available under Texas law.  E.g., Wheat v. Johnson, 238 F.3d 357, 362 (5th Cir. 2001) (citing cases).  Because Clay did not face a life

6

sentence without any possibility of parole, he was not entitled to a Simmons jury instruction.

To the extent that Clay urges that he was entitled to a Simmons instruction because this lengthy parole ineligibility has the practical effect of a life sentence without the possibility of parole, such an extension of Simmons would constitute a new rule of constitutional law, and is thus barred by the non-retroactivity principle announced in Teague v. Lane, 489 U.S. 288 (1989). See Tigner v. Cockrell, 264 F.3d 521, 525 (5th Cir. 2001).

B.      Equal Protection

Clay maintains that Texas' sentencing scheme at the time of his conviction violates the Fourteenth Amendment's guarantee of equal protection because it treated capital crime defendants differently from non-capital ones. Specifically, he contends that Texas law irrationally allowed non-capital defendants to receive jury instructions regarding parole ineligibility, while capital defendants could not demand such an instruction. He also observes that capital juries may now receive instructions about parole eligibility.[**]

Texas does not confer a fundamental right to parole. Id. at 526. Moreover, capital defendants are not a suspect class. Id. Accordingly, we apply a rational basis test to Texas's scheme. Green v. Johnson, 160 F.3d 1029, 1044 (5th Cir. 1998). Under a rational basis test, we must uphold a governmental classification if it rationally promotes a legitimate government objective. Id. We have held that a state could rationally conclude that juries should not consider parole ineligibility in capital cases. We stated that

---

[**] Texas has amended its law to allow a capital crime defendant to receive a jury instruction regarding the possibility of parole. TEX. CRIM. PROC. CODE ANN. art. 37.071 § (e)(2)(B) (Vernon 2002).

7

[i]nstructions on parole eligibility at the punishment phase of capital murder trials might tempt capital sentence juries to consider such transitory, but public, issues as prison overcrowding, the identities of the membership of the Texas Board of Pardons and Paroles, or the recent track record of that Board in releasing violent offenders, as factors which should be weighed in reaching their verdict at punishment. . . . The Texas legislature could rationally conclude that injection of parole issues at the punishment phase of capital murder trial would invite consideration of factors unrelated to the defendant's blameworthiness."

Id. at 1044 (internal citations omitted).

Accordingly, Clay has not shown a equal protection violation.

C.      Eighth Amendment

Finally, Clay argues that parole eligibility constitutes mitigating evidence, which must be considered under Penry v. Lynaugh, 492 U.S. 302 (1989).  However, "[t]he fact that [Clay] presents [this argument] as a Penry cruel and unusual punishment claim, rather than as a Simmons due process claim, does not require us to reach a different conclusion."  Alldridge v. Scott, 41 F.3d 213, 233 (5th Cir. 1994).  The Eighth Amendment does not compel jury instructions on parole.  Rudd v. Johnson, 256 F.3d 317, 321 (5th Cir. 2001).

Accordingly, Clay  has failed to make a substantial showing of the denial of a constitutional right on his parole-eligibility instruction claim.

III.      Sufficiency of the Evidence

Clay contends that there is insufficient evidence to support his conviction.  When reviewing the sufficiency of the evidence, a Court must inquire as to "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979).  This inquiry does not require a court to ask  "whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Id. at 319 (citation omitted).  "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution,

8

*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.  Moreover, where the state court has carefully reviewed the constitutional sufficiency of the evidence, its determination is entitled to substantial weight.  Id. at 332 n.15.

Clay's central contention is that King, a main prosecution witness, was an accomplice whose testimony needed to be corroborated under article 38.14 of the Texas Code of Criminal Procedure. TEX. CRIM. PROC. CODE ANN. art 38.14 (Vernon 1979) ("A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.").

Under Texas law, an accomplice is a person who "*participates* before, during, or after the commission of the crime and can be prosecuted for the same offense as the defendant or for a lesser-included offense."  Medina v. State, 7 S.W.3d 633, 641 (Tex. Crim. App. 1999) (emphasis added).  Texas's Court of Criminal Appeals found no evidence that King participated in the robbery or murder.  Simply put, King was not an accomplice.  Moreover, only federal constitutional claims are cognizable in a federal habeas proceeding.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). "[T]he Constitution imposes no requirement that the testimony of an accomplice-witness be corroborated by independent evidence.  Accordingly, the prosecution's failure to satisfy the requirements of the accomplice-witness sufficiency rule, and a state court's failure to enforce that purely state rule, simply [does] not warrant constitutional attention."  Brown v. Collins, 937 F.2d 175, 182 n.12 (5th Cir. 1991).

Applying the Jackson standard to Clay's claim, we conclude that a rational trier of fact could have found, beyond a reasonable doubt, that Clay committed the offense of capital murder.  As such,

Clay's insufficiency of the evidence claim fails.

## IV. Evidentiary Hearing

Clay seeks an evidentiary hearing to flesh out his claims. He alleges that the state trial court did not address pivotal factual issues. He also avers that he was impeded in his effort to develop material facts relevant to his claim. In particular, he maintains that his state habeas counsel did not have access to the District Attorney's case file.

Section 2254(e)(2) of the AEDPA precludes an evidentiary hearing where an "applicant has failed to develop the factual basis of a claim in State court proceedings, . . . unless the applicant" can show that "the claim relies on [either] a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or a factual predicate that could not have been previously discovered through the exercise of due diligence; and the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(A)(i)-(ii),(B). Because Clay does not rely on a new rule of constitutional law, he must show that he could not have discovered the factual predicate of his claim through the exercise of due diligence and that, but for constitutional errors committed, no reasonable factfinder would have found him guilty.

In his state habeas petition, Clay requested a hearing, but did not offer any support for why a hearing was required. "Mere requests for evidentiary hearings will not suffice; the petitioner must be diligent in pursuing the factual development of his claim." Dowthitt v. Johnson, 230 F.3d 733, 758 (5th Cir. 2000). Moreover, even if Clay had exercised due diligence, and even if he had met the requirements of § 2254(e), a district court's denial of an evidentiary hearing is reviewed for an abuse

10

of discretion.  <u>Clark v. Johnson</u>, 227 F.3d 273, 284 (5th Cir. 2000).  "[W]here a district court has before it sufficient facts to make an informed decision regarding the merits of a claim, a district court does not abuse its discretion in refusing to grant an evidentiary hearing."  <u>Murphy v. Johnson</u>, 205 F.3d 809, 816 (5th Cir. 2000).  Our review of the record reveals that the district court had before it all of the necessary facts to determine whether Clay's arguments warranted further attention.  We find no factual dispute requiring a hearing.  Therefore, we conclude that the district court did not abuse its discretion in denying Clay a hearing.[***]

CONCLUSION

Clay has not made a substantial showing of the denial of a constitutional right.  We therefore DENY his request for a COA.

Application for COA DENIED.

---

[***]  With regard to Clay's claim that he was impeded from obtaining access to the District Attorney's file, Clay never explains how his attorney was impeded nor does he provide an affidavit from his attorney supporting this claim.  Conclusory arguments such as these do not require the district court to conduct a hearing.